**CALUMET INDUSTRIES, INC., et al., Petitioners,**

v.

**William E. BROCK, et al., Respondents.**

**CALUMET INDUSTRIES, INC., et al., Petitioners,**

v.

**William BROCK, Secretary of Labor, et al., Respondents.**

Nos. 86–1203, 86–1408.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1986.

Decided Dec. 19, 1986.

Petitions for Review of Orders of the Occupational Safety and Health Administration (Civil Action No. 85–03889).

Lee Calligaro, with whom William J. Mutryn and Richard A. Feinstein, Washington, D.C., were on the brief for petitioners.

Laura V. Fargas, Atty., Dept. of Labor, of the Bar of the Supreme Court of Pennsylvania, pro hac vice by special leave of Court, with whom Joseph M. Woodward, Atty., Dept. of Labor, Washington, D.C., was on the brief for respondents. Mary Coster Williams, Asst. U.S. Atty. and Cynthia L. Attwood, Atty., Dept. of Labor, Arlington, Va., entered appearances for respondents.

Before SILBERMAN and WILLIAMS, Circuit Judges, and JAMESON,* Senior District Judge.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Petitioners Calumet Industries, Macmillan Ring-Free Oil Co., and Seaview Lubricants seek review of a Notice of Interpretation ("Notice") issued by the Occupational Safety and Health Administration ("OSHA"). The Notice seeks to draw a bright line between "carcinogenic" lubricating oils and "noncarcinogenic" lubricating oils. In these consolidated cases, petitioners contend that the Notice is invalid because OSHA failed to follow the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (1982) ("APA") and the Occupational Safety and Health Act, (required procedures codified at 29 U.S.C. § 655(b) (1982)) ("OSH Act"); and that OSHA's action in promulgating the Notice was "arbitrary and capricious" and therefore unlawful, 5 U.S.C. § 706(a)(A). We do not reach the merits of these claims because we are convinced that petitioners lack standing to challenge OSHA's issuance of the Notice.

I.

The genesis of this lawsuit occurred on November 25, 1983, when, pursuant to its authority under the OSH Act, the Secretary of Labor issued the Hazard Communication Standard, 29 C.F.R. 1910.1200 (1985) ("Standard"), scheduled to take effect two years later (November 25, 1985). The Standard requires chemical manufacturers and importers to assess the hazards of the chemicals they produce or import and affix labels with appropriate warnings to the containers of all chemicals deemed to be hazardous. It further specifies that carcinogenic chemicals be labelled as health hazards. A listing in one of several authoritative sources, including the International Agency for Research on Cancer (IARC) *Monographs*, establishes that a chemical is carcinogenic.

In April, 1984, IARC issued a Monograph that examined the carcinogenity of lubricating oils. In its study, IARC divided lubricating oils into eight classes, including the four classes pertinent here: vacuum distillates, acid-treated oils, solvent-refined oils, and hydrotreated oils. The Monograph concluded: (1) all vacuum distillates and acid-treated oils are carcinogenic; (2) "mildly" solvent-refined oils are carcinogenic, but "severely" solvent-refined oils are *not* carcinogenic; and (3) "mildly" hydrotreated oils are carcinogenic, but the evidence concerning "severely" hydrotreated oils does not permit a conclusion that such oils either are or are not carcinogenic. IARC did not, however, provide any definition of either "mild" and "severe" solvent-refining or "mild" and "severe" hydrotreating.

Affected oil refiners (those who make hydrotreated and solvent-refined lubricating oils) were quite perturbed by this series of events. Taken together, the Standard and the IARC Monograph required labelling "mildly" solvent-refined and hydrotreated oils. But where, they asked, was the line distinguishing "mild" from "severe?" As the effective date of the Standard drew near, numerous refiners and other interested parties urged OSHA to clarify

---

* Of the United States District Court for the District of Montana, sitting by designation pursu-

ant to 28 U.S.C. § 294(d).

the labelling requirements to identify the distinction between "mildly" and "severely" hydrotreated oils.[1]

In an effort to do so, OSHA examined several research papers that had formed the basis of IARC's study, seeking to identify those factors that distinguished the two forms of hydrotreating. Although OSHA was unable to find a definitive distinction between the two, it concluded from its research that temperature and pressure were the two most significant factors distinguishing "mild" from "severe" hydrotreating. Accordingly, OSHA decided to issue a "Notice of Interpretation," which took the form of a definition of "mild" hydrotreatment for labelling purposes under the Standard. On December 20, 1985, OSHA published its Notice of Interpretation, which said: "OSHA will ... regard an oil as mildly hydrotreated if it has been processed at a pressure of 800 pounds per square inch (psi) or less, at temperatures up to 800° F, independent of other process parameters." 50 Fed.Reg. 51854 (Dec. 20, 1985). The Notice did not address the distinction between "mildly" and "severely" solvent-refined oils.

Petitioners do not make either hydrotreated or solvent-refined lubricating oils; Calumet and Seaview manufacture vacuum distillate oils, and Macmillan makes vacuum distillate and acid-treated oils. All three petitioners acknowledge that the Standard clearly requires them to label all their products and that they have complied with that requirement. Despite the fact that IARC's 1984 Monograph did not create any confusion about *their* labelling obligation, petitioners nevertheless participated in the efforts described above to convince OSHA to more precisely interpret the Standard's labelling requirements as they pertained to hydrotreated oils. But while directly affected refiners merely requested clarification of the labelling requirements, petitioners urged OSHA to adopt a more stringent labelling policy

whereby any product for which health evidence was inconclusive must be labelled as hazardous. Petitioners argued this approach would, among other things, reduce the availability of unlabelled lubricating oils, thus protecting the market position of those refiners (like petitioners) who were already required to label their products. OSHA rejected that argument, choosing (as we have noted) to permit its unclarified Standard to go into effect as scheduled on November 25, 1985. Petitioners then filed suit in district court seeking to enjoin enforcement of the Standard until OSHA clarified the labelling requirements for hydrotreated and solvent-refined oils. When OSHA subsequently issued the Notice purporting to clarify the Standard, petitioners amended their complaint to reflect the contentions they now assert: the Notice is invalid because OSHA failed to follow notice and comment rulemaking; the Notice is not supported by the record, lacks a rational basis, and is inconsistent with the purpose of the OSH Act; and the Notice, as it stands, is arbitrary and capricious. The district court, pursuant to 28 U.S.C. § 1631, transferred the complaint to our court.

Conceding that the Notice does not pertain to the products they make, petitioners nevertheless contend they have standing to bring this complaint because they are losing sales and profits to producers of hydrotreated and solvent-refined oils who are *not* required to label their products under the Standard as interpreted by the Notice. Petitioners argue that the line drawn between "mildly" and "severely" hydrotreated oils is underinclusive and should be redrawn to require labelling additional hydrotreated oils. They also imply that manufacturers of carcinogenic solvent-refined oils are exploiting the continuing impreciseness in the Standard regarding solvent-refined oils to avoid labelling their products. Petitioners seek reversal of OSHA's Notice and a stay of the Standard, as it pertains to lubricating oils, until the labelling require-

---

**1.** Apparently, the imprecise distinction between "mildly" and "severely" solvent-refined oils was not the major focus of refiners' complaints.

ments of the Standard are "adequately" clarified.

## II.

■ Petitioners contend they have met both the constitutional and prudential requirements of standing. Although we very much doubt petitioners could establish constitutional standing,[2] we need not reach that issue because it is, in our view, abundantly clear that petitioners do not meet non-constitutional prudential standing criteria. When a litigant seeks judicial review of an agency decision, he must show that "the interest sought to be protected by the complaint is arguably within the zone of interests to be protected or regulated by the statute … in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). There must be "some indicia—however slight—that the litigant before the court was intended to be protected, benefited or regulated by the statute under which suit is brought." *Copper & Brass Fabricators Council, Inc. v. Department of the Treasury*, 679 F.2d 951, 952 (D.C.Cir.1982). Petitioners gain standing under the APA not because their interests are merely "implicated" by the agency action but because "Congress intended … that class to be relied upon to challenge agency disregard of the law." *Block v. Community Nutrition Institute*, 467 U.S. 340, 347, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984).

■ Petitioners would have standing under the "protected interests" leg of the zone of interest test if their complaint asserted the infringement of an interest that is protected by the OSH Act. However, it is now well settled in other Circuits that the interest to be protected by the OSH Act is worker safety, *see, e.g., R.T. Vanderbilt Co. v. OSHRC*, 728 F.2d 815, 818 (6th Cir. 1984); *R.T. Vanderbilt Co. v. OSHRC*, 708 F.2d 570, 577 (11th Cir.1983); *Fire Equipment Manufacturers' Association, Inc. v. Marshall*, 679 F.2d 679, 682 (7th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983), and *not* business profits, *see, e.g., R.T. Vanderbilt*, 708 F.2d at 578 (manufacturer's economic injury not sufficient to obtain judicial review); *Fire Equipment Manufacturers'*, 679 F.2d at 682 (manufacturers' lost profits not within zone of interest protected by OSH Act). We agree with these courts. As petitioners here do not come before us as protectors of worker safety, but instead as entrepreneurs seeking to protect their competitive interests, we think it plain they lack standing under the "protected interests" leg of the zone of interests test.

Nevertheless, petitioners contend that although not arguably protected by the OSH Act, they are certainly included within the Act's "regulatory scheme" and therefore have standing under the "regulated interests" leg of the zone of interests test. To be sure, petitioners are regulated by the OSH Act, which gives the Labor Secretary authority to promulgate a wide range of occupational safety and health standards. And petitioners are also regulated by the Hazard Communication Standard, which requires them, as manufacturers of hazardous chemicals, to label their lubricating oils. But petitioners are concededly *not* regulated by the agency action they challenge—the Notice. We have held that to have standing under the "regulated interests" leg, it is not enough that petitioners be regulated merely by the statute upon

**2.** To have standing under the Constitution, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Valley Forge Christian College v. Americans for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). If the Notice that petitioners challenge were invalidated, then the Standard for manufacturers of hydrotreated oils would again be ambiguous; arguably, petitioners' competi-

tors would exploit this ambiguity to avoid labelling their products. It is difficult to see how that result could enhance petitioners' competitive position. Indeed, petitioners appear to complain about that very situation with respect to manufacturers of solvent-refined oils. Petitioners would therefore seem to run afoul of the causation requirement reflected in both the "fairly traceable" and "redressible" aspects of the standing test.

which the agency action is based. *Tax Analysts and Advocates v. Blumenthal,* 566 F.2d 130, 143–45 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (taxpayer regulated by Internal Revenue Code cannot challenge tax credit provision not pertaining to him). Granting "regulated interest" standing to petitioners to challenge OSHA's Notice simply because they happen to be regulated by the OSH Act in general and by other aspects of the Standard would "stretch[ ] the concept of regulation [as used in the zone of interests test] to implausible limits." *Tax Analysts,* 566 F.2d at 143.

Arguing that a competitor oil manufacturer not subject to an OSHA regulation has standing to allege that another oil manufacturer was treated too leniently by that regulation is simply another way of contending that a competitor's market position is protected by the OSH Act—a proposition we, and other courts, soundly reject. Instead, to gain standing under the "regulated interests" leg of the zone of interests test, petitioners must show they are directly, even if only minimally, regulated by the

agency action they challenge.[3] Since they do not manufacture hydrotreated oils (or, for that matter, solvent-refined oils), petitioners are merely challenging the Standard's application (as interpreted by the Notice) to third-party competitors. To paraphrase our statement in *Tax Analysts,* where we denied standing in a similar situation, "[petitioners are] not directly regulated by the rulings being challenged in this case. Rather, a more appropriate description is that [they] operate[ ] in an industry which is regulated by the rulings but do[ ] not operate in that sphere of the industry which is the object of the regulation." *Tax Analysts,* 566 F.2d 143 n. 82. Accordingly, we hold that petitioners lack standing; their petition is therefore,

*Denied.*

---

**3.** The only litigants who would have "regulated interests" standing to challenge OSHA's Notice are manufacturers of hydrotreated oils processed at a pressure of 800 psi or less, at temperatures up to 800°F, who are required by virtue of the Notice to label their products. Moreover, such litigants would have standing only to contest the burden the Notice imposes on *them,* and not to contest the Notice's failure to similarly burden others.