982 F.2d 1389
 25 Fed.R.Serv.3d 293
 STOCK WEST CORPORATION, an Oregon corporation, Plaintiff-Appellant,
v.
Manuel LUJAN, Jr., in his official capacity as Secretary of
the United States Department of Interior; Stanley Speaks,
in his official capacity as Portland Area Director, Bureau
of Indian Affairs; Interior Board of Indian Appeals,
Defendants-Appellees.
 No. 91-35799.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1992.
Decided Jan. 13, 1993.
 
 Barbee B. Lyon, Tonken, Torp, Galen, Marmaduke & Booth, Portland, OR, for plaintiff-appellant.
 David W. Harder, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before: TANG, FERGUSON and THOMPSON, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Stock West Corporation ("Stock West" or "Company") appeals the dismissal of its action seeking judicial review of agency decisions. Specifically, the Company seeks review of the United States Department of the Interior's decisions not to approve pursuant to 25 U.S.C. § 81 two contracts between Stock West and two corporations established under the laws of the Confederated Tribes of the Colville Reservation ("Tribe"). Stock West contends the district court erred in dismissing the case for lack of prudential standing and nonjoinder of the Tribe as an indispensable party under Federal Rule of Civil Procedure 19. We vacate-in-part, reverse-in-part, and remand.
 
 I.
 
 2
 In 1984, Stock West signed two contracts with two tribal entities, the Colville Tribal Enterprise Corporation and the Colville Indian Precision Pine Company. Under the contracts, Stock West was to manage the construction and subsequent operation of a sawmill on the Tribe's reservation in Oregon. Both contracts contained arbitration provisions.
 
 
 3
 Under 25 U.S.C. § 81, some contracts made with Indians must be approved by the Secretary of the Interior and the Commissioner of Indian Affairs. Failure to obtain Interior Department approval of contracts subject to section 81 renders such contracts void.[1]
 
 
 4
 The Secretary and the Commissioner have delegated their responsibilities under section 81 to Bureau of Indian Affairs ("BIA") Area Directors. See 25 U.S.C. § 1a (authorizing delegations of authority). Decisions made by BIA Area Directors are subject to administrative appeal. See id.; 25 C.F.R. §§ 2.1-.21 (setting forth appeal procedures); 43 C.F.R. §§ 4.200-.340 (additional procedures made relevant under 25 C.F.R. § 2.4(e)).
 
 
 5
 The two contracts at issue provide for Interior Department approval. However, the Interior Department has maintained consistently that the contracts are not subject to section 81, and do not require agency approval. The agreements have therefore never been approved by the Department.
 
 
 6
 The Department first took the position in September 1984 when the parties submitted the contracts for review that section 81 approval was not necessary. At that time, the Secretary's delegate stated, "If the parties or the Regional Solicitor determine my approval of these documents is necessary or desirable, I will reconsider my decision not to approve." At the request of the Tribe, the BIA reconsidered its decision but did not change its position. No administrative appeal was taken from this decision and the parties proceeded as though the contracts were in effect.
 
 
 7
 In 1986, the tribal corporations filed a lawsuit in tribal court alleging that Stock West was in breach of the agreements. Stock West denied the allegations and pursuant to the agreements moved the tribal court to compel arbitration.[2] The tribal corporations opposed arbitration, arguing that the contracts--including the arbitration provisions--were void under 25 U.S.C. § 81 for lack of Interior Department approval.
 
 
 8
 Shortly before the tribal suit was filed, Stock West had again sought section 81 approval of the two contracts. Again, the BIA denied the request on the ground that section 81 did not apply. Stock West did not appeal administratively this decision.
 
 
 9
 In May 1988, the tribal court ruled that the contracts were subject to section 81 and that the agreements--including the arbitration provisions--were therefore void for lack of section 81 approval. Confederated Tribes v. Stock West, Inc., 15 Indian L.Rep. (Am. Indian Law. Training Program) 6019 (Colville Tribal Ct. May 2, 1988).
 
 
 10
 Stock West subsequently again renewed its request for BIA approval of the contracts. By letter dated February 21, 1989, the BIA replied that, in view of (1) its prior assertions that the contracts were not subject to section 81, (2) the parties' failure to appeal these prior decisions, (3) the pending litigation between the parties, and (4) the fact that the tribal corporations were no longer seeking section 81 approval, the BIA did "not believe it appropriate to consider Stock West's request to retroactively approve these contracts." Stock West appealed this decision to the Interior Board of Indian Appeals ("IBIA"). See 25 C.F.R. § 2.4(e); 43 C.F.R. § 4.332 (setting 30 day period within which to appeal).[3] On administrative appeal, the Tribe filed a brief supporting the BIA's decision and suggested that Stock West's appeal was untimely.
 
 
 11
 Although the Company's administrative appeal was filed within 30 days after the last BIA decision, the IBIA dismissed the appeal on the ground that Stock West had not timely appealed the earlier BIA decisions:
 
 
 12
 The record shows that appellant [i.e., Stock West] believed in 1984 and at all times since then that BIA approval of these agreements was necessary for them to be effective. BIA, on the advice of counsel, disagreed with appellant, and specifically denied appellant's requests to approve or to retroactively approve the agreements on three separate occasions. Appellant appealed only the last of these denials. The Board finds that this appeal must be dismissed as being an untimely appeal from appellee's [i.e., the BIA Area Director's] January 9, 1985, refusal to approve the agreements and/or his July 21, 1987, refusal to approve the agreements retroactively. In either case, appellee's decision became final when no timely appeal was taken. Under 43 CFR 4.332(a), the Board lacks jurisdiction over an untimely appeal.
 
 
 13
 Stock West, Inc. v. Portland Area Director, BIA, 18 IBIA 7, 11 (Oct. 5, 1989).
 
 
 14
 In March of 1990, Stock West filed this action in district court against the Secretary of the Interior, the BIA Area Director, and the IBIA. In its complaint, Stock West requests the following relief: judicial declarations that Stock West's administrative appeal to the IBIA was timely, that the BIA's refusal to consider Stock West's request for retroactive section 81 approval was arbitrary and capricious, and that the BIA's refusal to grant section 81 approval was arbitrary and capricious. Stock West also seeks an injunction requiring defendants to grant retroactive section 81 approval of the agreements. The complaint cites as the bases for federal jurisdiction 5 U.S.C. § 702 (providing for judicial review under the Administrative Procedure Act) and 28 U.S.C. § 1331 (general federal question jurisdiction).
 
 
 15
 On July 10, 1990, the Findings and Recommendation of a federal magistrate judge were filed in the district court. The magistrate judge concluded that Stock West lacked prudential standing to seek review of the Interior Department decisions because the Company's interests were not within the zone of interests protected or regulated by 25 U.S.C. § 81. The magistrate judge also found that dismissal was required because the Tribe was a necessary party under Fed.R.Civ.P. 19 and the Tribe could not be joined due to sovereign immunity. Given these two conclusions, the magistrate judge found it unnecessary to consider the additional argument that the absence of any law governing Stock West's claims rendered the matter nonjusticiable.
 
 
 16
 The district court adopted the Findings and Recommendation of the magistrate judge without comment and dismissed the action. Stock West timely appeals.
 
 II.
 
 17
 Section 10(c) of the Administrative Procedure Act, ch. 324, 60 Stat. 237, 243 (1946), codified as revised at 5 U.S.C. § 704, provides that agency action otherwise deemed final shall be final for purposes of seeking judicial review notwithstanding the availability of an appeal to a superior agency authority. The statute also provides, however, that an agency may promulgate regulations requiring that an administrative appeal be taken before judicial review of the agency action can be obtained.[4]
 
 
 18
 Since 1975, regulations governing challenges to decisions of the Bureau of Indian Affairs have required an administrative appeal from most BIA decisions before judicial review of such decisions can be obtained. See, e.g., 25 C.F.R. § 2.3(b) (1988); 40 Fed.Reg. 20,625-26 (1975). In 1989, the regulations requiring an administrative appeal were revised without changing the appeal requirement. See 54 Fed.Reg. 6478, 7666 (1989). The provision requiring an appeal now appears at 25 C.F.R. § 2.6(a) (1992).[5] These regulatory revisions also eliminated an intermediate appeal to the Commissioner of Indian Affairs and provided for direct review of BIA Area Director decisions by the Interior Board of Indian Appeals. See 54 Fed.Reg. 6478 (1989); compare 25 C.F.R. § 2.3(a) (1988) with id. § 2.4(e) (1992). At the same time, the rules governing appeals to the IBIA were amended to "ensure compatibility between those regulations and regulations of the Bureau of Indian Affairs." 54 Fed.Reg. 6483 (1989). In particular, one amendment reiterated the need for an appeal to the IBIA before the decision of an BIA Area Director could be reviewed judicially. See id. at 6486; compare 43 C.F.R. § 4.314(a) (1991) with id. (1988).[6]
 
 
 19
 On three occasions, we have upheld the dismissal of lawsuits challenging BIA decisions under the Administrative Procedure Act on the ground that the plaintiff failed to take the required administrative appeal. Joint Bd. of Control v. United States, 862 F.2d 195, 199-201 (9th Cir.1988); Faras v. Hodel, 845 F.2d 202, 204 (9th Cir.1988); White Mountain Apache Tribe v. Hodel, 840 F.2d 675, 677-78 (9th Cir.1988); see also Attakai v. United States, 746 F.Supp. 1395, 1412-13 (D.Ariz.1990). In doing so, we have noted the jurisdictional nature of the administrative appeal requirement. Joint Bd. of Control, 862 F.2d at 199 (quoting White Mountain, 840 F.2d at 677); Faras, 845 F.2d at 204. The requirement permits the development of a factual record, application of agency expertise, and possible resolution of the dispute without resort to federal court. Joint Bd. of Control, 862 F.2d at 199; White Mountain, 840 F.2d at 677.
 
 
 20
 Stock West was undoubtedly required to take an administrative appeal from the BIA Area Director's decisions regarding the two sawmill contracts before seeking judicial review. However, if the Interior Department's administrative appeal requirement is proper and was properly applied in this case, Stock West will not be able to obtain IBIA review of the merits of the BIA decisions because, according to the IBIA, the time in which Stock West could bring administrative appeals has elapsed.
 
 
 21
 We are therefore confronted with the question whether Stock West's federal action under the APA can proceed, given that IBIA review of the BIA decisions is apparently no longer available to the Company. The district court did not consider this question and instead ruled that Stock West lacks prudential standing to challenge the Interior Department decision under section 81 and that the Tribe is an indispensable party to such challenges. If we were to disagree with these conclusions, however, we would have to consider the issue of exhaustion. Turning to that issue first, we hold that, unless and until Stock West prevails in a judicial challenge to the IBIA's refusal to reach the merits of the administrative appeal, or the Company otherwise succeeds in obtaining IBIA review, Stock West is barred from obtaining judicial review of the BIA Area Director's decisions not to approve the two sawmill contracts.
 
 
 22
 Our reasoning is as follows. If at the present stage of proceedings we were to permit a challenge to the merits of the agency action, we would be, in the words of the White Mountain court, "in flat contravention of the principles of exhaustion." 840 F.2d at 677. Such a decision would eviscerate administrative appeal requirements enacted pursuant to 5 U.S.C. § 704. Unless we limit the scope of Stock West's case as it presently stands, any party could obtain judicial review of initial agency actions simply by waiting for the administrative appeal period to run and then filing an action in district court.
 
 
 23
 We have recognized exceptions to the administrative appeal requirement in cases where the agency has already announced its final decision or there are other indicia of administrative bias that would render an appeal futile. White Mountain, 840 F.2d at 677-78; Joint Bd. of Control, 862 F.2d at 200. There is no reason to think these exceptions apply here, however. In particular, we reject the idea that Stock West's own failure to bring a timely administrative appeal renders such an appeal "futile" for purposes of an exception to the exhaustion requirement.
 
 
 24
 Applying the exhaustion requirement to narrow the scope of Stock West's case obviates, for the time being, any need to consider the Company's prudential standing to challenge judicially the Interior Department's decisions regarding approval of the sawmill contracts. Similarly, we need not consider whether the Tribe is an indispensable party to the adjudication of such issues. Because the district court also need not have considered these questions, we vacate its decision in these regards.
 
 
 25
 The remaining questions for us are whether Stock West has prudential standing with regard to its challenge of the timeliness requirement, whether the Tribe is an indispensable party with regard to this issue, and whether there is law to govern the adjudication of this issue.[7] Below, we answer each of these questions affirmatively. To the extent the district court's decision suggests contrary conclusions, we reverse its rulings.
 
 III.
 
 26
 In Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987), the Supreme Court considered whether a trade association representing securities brokers and others could challenge an administrative decision of the Comptroller of the Currency. The Comptroller had decided that two banks could open discount brokerages outside their respective home states without violating the National Bank Act. 479 U.S. at 390-92, 107 S.Ct. at 752-53. The Court had no question that the trade association, representing the banks' competitors, could show injury sufficient to satisfy Article III. See id. at 393 n. 5, 107 S.Ct. at 753 n. 5. Instead, the question presented was whether, as a matter of prudential standing, the association sought to vindicate an interest " 'arguably within the zone of interests to be protected or regulated by the statute' " at issue. Id. at 396, 107 S.Ct. at 755 (quoting Association of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)) (emphasis added).[8]
 
 
 27
 In addressing the trade association's standing to seek judicial review, the Clarke Court focused on whether the interests of the banks' competitors fell within the zone of interests protected by the National Bank Act. See id. at 403, 107 S.Ct. at 759. The Court concluded that prudential standing existed because the statute at issue protected the same interest asserted by the plaintiff. Id. In drawing this conclusion, the Court stated that
 
 
 28
 The "zone of interest" test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision.... The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.
 
 
 29
 Id. at 399-400, 107 S.Ct. at 757 (footnote omitted); accord Soler v. Scott, 942 F.2d 597, 605 (9th Cir.1991), vacated as moot sub nom. Sivley v. Soler, --- U.S. ----, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992); National Wildlife Fed'n v. Burford, 871 F.2d 849, 852 (9th Cir.1989); Friends of the Earth v. United States Navy, 841 F.2d 927, 932 (9th Cir.1988).
 
 
 30
 As in Clarke, there can be little dispute that Stock West is able to show sufficient injury for purposes of Article III. Without Interior Department approval of the contracts at issue, Stock West is subject to a powerful defense against any claim the Company may have based on the contracts at issue. The question, then, is whether Stock West can show a protected or regulated interest.
 
 
 31
 In order to meet the "zone of interests" test for prudential standing, Stock West disclaims any intent of asserting an interest protected by 25 U.S.C. § 81. Instead, Stock West contends that it meets the "zone of interests" test because its interest in contracting with Indians and Indian tribes is regulated by the statute. As we have said, however, we need not decide today whether Stock West has prudential standing to challenge the Interior Department decisions under section 81. Instead, we consider only whether Stock West has been subject to the agency's rules governing administrative appeals, including the requirement that such appeals be filed within a specified period of time, in a manner which permits the Company to challenge these regulations.
 
 
 32
 Past cases have considered self-evident the standing of parties whose interests are arguably regulated by the statute in question. For example, neither of two cases cited by Stock West analyzes what it means to have an interest "regulated" by a statute. In NAACP v. City of Richmond, 743 F.2d 1346 (9th Cir.1984), we held simply that, because the challenged city ordinance "regulates parade permits," and the NAACP wished to hold a parade, the NAACP had prudential standing. Id. at 1352.[9] In Credit Union Nat'l Ass'n v. Board of Governors, 700 F.Supp. 1152 (D.D.C.1988), the district court faced a challenge to a Federal Reserve regulation that affected the duration of "holds" placed on deposits made in the form of credit union "share drafts." The court declared, "[I]t is clear that the credit union[ ] [plaintiffs] are arguably within the zone of interests to be regulated." Id. at 1159.[10]
 
 
 33
 The only guidance we have found as to whether or not a party is subject to regulation for purposes of prudential standing appears in Calumet Indus., Inc. v. Brock, 807 F.2d 225 (D.C.Cir.1986). In that case, petitioners sought judicial review of a "Notice of Interpretation" issued by the Occupational Safety and Health Administration. The challenged portion of the notice distinguished between "mildly" and "severely" solvent-refined and hydrotreated lubricating oils for safety-labelling purposes. Id. at 226. While producing other kinds of lubricants, the petitioners produced neither solvent-refined nor hydrotreated oil. Petitioners were concerned that competitors who did produce such oils might gain a competitive advantage if they were able to avoid some safety-labelling. Id. at 227.
 
 
 34
 To show prudential standing, the petitioners argued that, as oil producers, they were included within the regulatory scheme of the Occupational Safety and Health Act, and therefore had "standing under the 'regulated interests' leg of the zone of interests test." Id. at 228. The District of Columbia Circuit rejected this argument. It held that, "to gain standing under the 'regulated interests' leg of the zone of interests test, petitioners must show they are directly, even if only minimally, regulated by the agency action they challenge." Id. at 229 (footnote omitted). The court then paraphrased an earlier ruling:
 
 
 35
 [P]etitioners are not directly regulated by the rulings being challenged in this case. Rather, a more appropriate description is that they operate in an industry which is regulated by the rulings but do not operate in that sphere of the industry which is the object of the regulation.
 
 
 36
 Id. (quotation and brackets omitted); see also Hazardous Waste Treatment Council v. United States EPA, 861 F.2d 277, 284-85 (D.C.Cir.1988) (discussing Calumet Industries ), cert. denied, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989).
 
 
 37
 In contrast to Calumet Industries, Stock West's interest in obtaining administrative review of the BIA Area Director's decisions is directly affected by the agency action at issue here, i.e., the IBIA's decision that the appeal was untimely. Due to Interior Department rules regarding appeals to the IBIA, and the agency's interpretation and application thereof, Stock West is stymied in its efforts to avoid having its contracts with the Tribe nullified. Accordingly, we find that the district court erred in concluding that Stock West lacks prudential standing insofar as the Company seeks to challenge the IBIA's refusal to hear the merits of the administrative appeal.
 
 
 38
 In support of the district court's ruling, the government argues that a grant of prudential standing to Stock West would frustrate the undisputed purpose of 25 U.S.C. § 81: protection of Indians. However, in the absence of a statute specifically barring judicial review, it is not clear that such an argument is even relevant when a party shows that it has an interest directly regulated by the agency action in question.
 
 
 39
 In Clarke, the Supreme Court stated that, "[i]n cases where the plaintiff is not itself the subject of the contested regulatory action, the [zone of interests] test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." 479 U.S. at 399, 107 S.Ct. at 757 (emphasis added). Conversely, when a party is subject to the regulatory action, we believe that only an explicit declaration of Congress barring judicial review could overcome "Congress' evident intent to make agency action presumptively reviewable." Id.
 
 
 40
 Contrary to the government's assertion, there is nothing in section 81 suggesting that a grant of prudential standing to non-Indians would "disrupt [a] complex and delicate administrative scheme." Block v. Community Nutrition Institute, 467 U.S. 340, 348, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984). Unlike in Community Nutrition, the party seeking review here is exactly the same party involved in the administrative process. Permitting a regulated party to sue for judicial review will not invite the specter foretold by Community Nutrition, where the Court feared that consumer plaintiffs might be used by regulated parties to avoid exhausting administrative remedies. In this case, the government also fails to provide evidence that Congress intended the administrative process under 25 U.S.C. § 81 to be expeditious or that Congress has provided Stock West with other means by which to vindicate its interest in contracting with Indians. Cf. id. at 350, 104 S.Ct. at 2456.
 
 
 41
 Furthermore, in contending that Stock West lacks prudential standing, the government overstates the purpose of section 81. Contrary to the government's view, there is no reason to believe that the statute is intended to protect Indians from their legitimate contractual obligations. To the extent that Stock West seeks section 81 approval for legitimate contracts, a finding of prudential standing to challenge Interior Department timeliness requirements does not frustrate section 81's purpose of protecting Indians from illegitimate deals.[11]
 
 
 42
 In sum, we conclude that Stock West has prudential standing to challenge judicially the decision of the IBIA that the Company's administrative appeal was untimely and therefore barred.
 
 IV.
 
 43
 We review for an abuse of discretion the district court's decision to dismiss an action when a non-party cannot be joined. Confederated Tribes v. Lujan, 928 F.2d 1496, 1498 (9th Cir.1991) ("Chehalis Indians"); Makah Indian Tribe v. Verity, 910 F.2d 555, 557 (9th Cir.1990) ("Makah Indians").
 
 
 44
 A two-step analysis is used to determine whether to dismiss an action due to the absence of a non-party. Initially, a court must decide whether the absent entity should be joined if joinder is feasible. Fed.R.Civ.P. 19(a). To make this determination, the court first considers whether complete relief can be afforded those already party to the action. If so, the court must also determine whether the absent party has a legally protected interest in the outcome of the action. If it does, further considerations are necessary. Chehalis Indians, 928 F.2d at 1498; Makah Indians, 910 F.2d at 558-59.
 
 
 45
 Here, Stock West apparently concedes that the Tribe is an entity that should be joined if feasible. Instead, Stock West disputes the district court's conclusions (A) that the Tribe cannot be joined owing to its sovereign immunity and (B) that the action should therefore be dismissed.
 
 A. Sovereign Immunity
 
 46
 As Stock West concedes, Indian tribes and their governing bodies enjoy common-law immunity from suit. Burlington N.R.R. v. Blackfeet Tribe, 924 F.2d 899, 901 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992). Absent express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress, tribes cannot be sued. Id.
 
 
 47
 Stock West contends that by participating in the administrative proceedings before the Interior Department, the Tribe has waived its sovereign immunity insofar as judicial review is sought for review of the agency actions. As evidence of the Tribe's participation, Stock West points to the Tribe's October 1984 request that the BIA reconsider its initial determination that the contracts were not subject to 25 U.S.C. § 81. Stock West also calls attention to the Tribe's participation in the IBIA hearing. In support of its waiver argument, Stock West cites United States v. Oregon, 657 F.2d 1009 (9th Cir.1981).
 
 
 48
 As we explain, however, even assuming that the Tribe has not waived its sovereign immunity, dismissal of Stock West's action was not necessary.
 
 B. Propriety of Dismissal
 
 49
 Before an action can be dismissed due to the infeasibility of joining a party, the district court must consider (1) prejudice resulting to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. Chehalis Indians, 928 F.2d at 1499; Makah Indians, 910 F.2d at 560.
 
 
 50
 As an initial matter, the government argues that the Tribe's sovereign immunity alone is sufficient to warrant dismissal under Rule 19. We have previously rejected this argument in favor of the traditional four-part test of Rule 19(b). Chehalis Indians, 928 F.2d at 1499. But see Enterprise Management Consultants, Inc. v. United States ex rel. Hodel, 883 F.2d 890, 893-94 (10th Cir.1989) (concluding that Tribe's immunity virtually required dismissal under Rule 19 where non-Indian contractor sought review of Interior Department's refusal to grant section 81 approval).
 
 
 51
 Of the four relevant factors, Stock West emphasizes the fourth. Specifically, the Company claims that federal district court is the only forum in which it can obtain review of the Interior Department decisions. This may be true, but the argument overlooks Stock West's purpose in seeking judicial review. The history of this case reveals that Stock West wishes to reverse the effect of the Colville Tribal Court's decision that the sawmill contracts are subject to 25 U.S.C. § 81. In deciding whether an alternate forum exists for purposes of Rule 19, it would be appropriate to consider other means by which the tribal court's decision might be reversed. Yet the parties do not discuss the availability of an appeal from the tribal court decision or other means by which the decision may be reviewed.[12] If an appeal can be taken from the tribal court decision, then as a practical matter an alternate forum may exist in which Stock West's interests could be vindicated. Thus, the role of the fourth Rule 19(b) factor, i.e., availability of an alternate forum, is unclear here.
 
 
 52
 Regarding the first factor of the Rule 19(b) analysis: It is uncertain that Stock West will be prejudiced by a dismissal of this action. So far, the tribal court has disregarded the Interior Department's decisions concerning the contracts between Stock West and the tribal corporations. Thus, even if the Department eventually approves the contracts pursuant to 25 U.S.C. § 81, this would not guarantee relief to Stock West insofar as the lawsuit pending in tribal court is concerned.
 
 
 53
 Assuming, however, that Stock West is able to convince the tribal court to abide by a favorable Interior Department decision, there remains the question of prejudice to the absent Tribe in the event this action goes forward. Stock West argues that the Tribe will not be prejudiced because the government will protect its interests. However, as the district court observed, the Tribe and the Interior Department have taken inconsistent positions regarding whether 25 U.S.C. § 81 applies to the sawmill contracts.[13] Thus, for purposes of adjudicating the applicability of section 81, the government is not an adequate representative of the Tribe.
 
 
 54
 Nevertheless, the Tribe's interest in whether Stock West will be able to obtain IBIA review of the BIA decisions is negligible. Indeed, the Tribe would suffer little prejudice if section 81 is ultimately found to be applicable. Such a finding would be consistent not only with the Tribe's expectations at the time the contracts were signed, but also with the tribal court's later adjudication. Furthermore, the government is perfectly capable of representing whatever interest the Tribe has in the promulgation, interpretation, and application of Interior Department regulations governing administrative appeals. On the whole, the Tribe would not be adversely affected if this action went ahead.
 
 
 55
 Regarding the second factor listed under Rule 19(b): In this case, relief can be shaped to lessen any prejudice to the Tribe. If Stock West prevails in any part of its action, the district court could remand the case for further agency proceedings rather than compel agency action. In this manner, the court would accommodate both the Tribe's absence in federal court and its apparent willingness to participate in Interior Department administrative proceedings. This approach also takes into account the third Rule 19(b) factor, whether an adequate, though not complete, remedy can be afforded the plaintiff.
 
 
 56
 In view of the foregoing, we conclude that the Tribe's absence from this action should not prevent the district court from considering Stock West's challenge to the Interior Department regulations governing administrative appeals.
 
 V.
 
 57
 As an alternate basis on which to affirm the district court, the government asserts that "review [of Interior Department decisions under 25 U.S.C. § 81] is not to be had [because] the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). The exception to judicial review of agency decisions described in Heckler stems from 5 U.S.C. § 701(a)(2). "This is a very narrow exception.... applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Chaney, 470 U.S. at 830, 105 S.Ct. at 1655 (internal quotations omitted).
 
 
 58
 The propriety of the Interior Department rules concerning timely administrative appeals, and the question whether Stock West's appeal to the IBIA was timely, are questions traditionally within the purview of the courts. Accordingly, we conclude this argument provides no basis on which to affirm the district court's ruling.
 
 VI.
 
 59
 Because Stock West has failed to exhaust administrative remedies, the Company is presently barred from pursuing judicial review of all claims except those pertaining to the Interior Department's decision that the Company's administrative appeal was untimely. As to these claims, Stock West has Article III and prudential standing. Further, we think adjudication of this issue can proceed in the absence of the Tribe. There is also sufficient law to adjudicate this issue. Accordingly, the judgment of the district court is vacated-in-part, reversed-in-part, and the case is remanded for further proceedings consistent with this opinion.
 
 
 60
 VACATED-IN-PART, REVERSED-IN-PART, and REMANDED.
 
 
 
 [1]
 The statute states in pertinent part:
 No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:
 ....
 Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.
 ....
 All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid.
 25 U.S.C. § 81 (emphasis added).
 
 
 [2]
 Stock West also resorted to federal court, seeking to enjoin the tribal proceedings and to compel arbitration. We affirmed the district court's decision to abstain. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1229-30 (9th Cir.1989)
 
 
 [3]
 At about the same time, the Company also sued the Tribe's attorney for legal malpractice and false representations arising from the sawmill contracts. This action has recently been the subject of en banc deliberations in this court. Stock West Corp. v. Taylor, 964 F.2d 912 (9th Cir.1992) (en banc)
 
 
 [4]
 Section 10(c) was both repealed and substantially reenacted by Pub.L. No. 89-544, 80 Stat. 378, 392-93, 653 (1966). The statute presently reads:
 Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.
 5 U.S.C. § 704.
 
 
 [5]
 Currently, section 2.6(a) reads:
 No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. 704, unless when an appeal is filed, the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately.
 
 
 [6]
 Section 4.314(a) currently provides that "[n]o decision of ... an official of the Bureau of Indian Affairs, which at the time of its rendition is subject to appeal to the Board, shall be considered final so as to constitute agency action subject to judicial review under 5 U.S.C. 704, unless made effective pending decision on appeal by order of the Board."
 
 
 [7]
 We may reach these questions because the IBIA has ruled on the timeliness question and no administrative appeal lies from that decision. We note in passing, however, that the basis for the IBIA decision is more accurately characterized as one based on the preclusive effect of prior administrative decisions rather than on timeliness
 
 
 [8]
 The Clarke Court emphasized that the "zone of interests" test is primarily for use in actions seeking judicial review of agency actions pursuant to 5 U.S.C. § 702. 479 U.S. at 395, 400 n. 16, 107 S.Ct. at 754-55, 757 n. 16 ("[T]he test is most usefully understood as a gloss on the meaning of § 702."). The test is therefore particularly relevant here because Stock West's action can only be viewed as an effort to obtain section 702 review of Interior Department decisions. See 5 U.S.C. §§ 703 (providing for "form of proceeding" for judicial review of agency action), 706 (providing scope of review)
 
 
 [9]
 NAACP v. City of Richmond did not involve a challenge to a federal agency decision, but the "zone of interests" test is also relevant to assessing prudential standing in other contexts. See Clarke, 479 U.S. at 400 n. 16, 107 S.Ct. at 757 n. 16
 
 
 [10]
 Two other cases cited by Stock West are not helpful here because the courts did not regard the plaintiffs as directly subject to regulation. Instead, plaintiffs were affected by regulations that applied to others. See Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco & Firearms, 860 F.2d 229, 233 (7th Cir.1988) (referring to plaintiff as "an unregulated entity"); Cotovsky-Kaplan Physical Therapy Assoc., Ltd. v. United States, 507 F.2d 1363, 1364 (7th Cir.1975) (plaintiffs "not directly regulated")
 
 
 [11]
 Even if Stock West were seeking to compel approval of shady agreements, it is doubtful that the district court has power in this case to order Interior Department approval of the contracts. See Soler, 942 F.2d at 602-03 & n. 3 (mandamus not available to instruct an official how to exercise discretion; mandatory injunction sought under 5 U.S.C. § 706(1) tantamount to petition for writ of mandamus); Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown, 656 F.2d 564, 566-67 (10th Cir.1981) (same), cited in Soler, 942 F.2d at 603. Thus, recognition of Stock West's prudential standing does not jeopardize Indian interests because, absent arbitrary and capricious decisions, the Interior Department retains ultimate authority whether to approve the contracts
 
 
 [12]
 We note that Stock West has moved the tribal court for reconsideration of its decision refusing to compel arbitration. The matter has been pending for some time, however, and the motion cannot be viewed as an adequate alternative to the Company's challenge of Interior Department decisions
 
 
 [13]
 Although the Tribe filed a brief with the IBIA encouraging the IBIA to uphold the BIA's Area Director's decision, the Tribe did not argue in support of the Area Director's determination that the contracts were not subject to 25 U.S.C. § 81. Instead, the Tribe opposed retroactive approval of the contracts