**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PACIFIC FLEET SUBMARINE MEMORIAL ASSOCIATION, INC., DBA USS Bowfin Submarine Museum and Park,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY; HAWAI'I STATE DEPARTMENT OF HUMAN SERVICES; JOHN DOES 1-10; DOE GOVERNMENT AGENCIES 1-10; RAY MABUS; PATRICIA MCMANAMAN, Director of the Hawai'i State Department of Human Services, sued in her official capacity,<br><br>        Defendants - Appellees. | No. 11-15753<br><br>D.C. No. 1:09-cv-00467-DAE-KSC<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued October 17, 2012
Submitted March 29, 2013

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Honolulu, Hawaii

Before: REINHARDT, THOMAS, and PAEZ, Circuit Judges.

The Plaintiff leases property from the Navy to operate a submarine museum at which the former U.S.S. Bowfin, a World War II submarine, is exhibited. In a prior lawsuit to which the Plaintiff was not a party, a federal district court concluded that the Randolph-Sheppard Act, 20 U.S.C. § 107 *et seq* (RSA), applies on land leased by the Navy to private parties. The RSA requires that certain preferences be granted to blind vendors of foodstuffs and certain other goods on federal property. The district court did not, however, specifically instruct the Navy as to how to implement the RSA at the particular property leased by the Plaintiff, nor did the district court examine whether any of the statutory exemptions that apply to certain federal properties applied to the Plaintiff's particular facilities. After the Navy advised the Plaintiff that it viewed itself as bound by the district court's order to impose new conditions requiring blind vendor preference at the Plaintiff's facilities in any future lease, the Plaintiff filed this lawsuit contending that the RSA does not require the implementation of blind preference at its particular facilities. The district court found that the Plaintiff lacked prudential standing, that its claims were not ripe, and that it had failed to exhaust its

2

administrative remedies under the RSA.  We reverse, and conclude that the Plaintiff's claims are justiciable.

I

As a threshold matter, we must first determine whether we have jurisdiction over this appeal on the basis of a "final decision of [the] district court[]."  28 U.S.C. § 1291.  We conclude that we do.  The Government suggests that the district court may not have entered a final decision because it permitted the Plaintiff to dismiss its constitutional claims without prejudice in order to obtain final judgment.  Although a district court order purporting to be a final judgment will not confer jurisdiction where the record demonstrates that the parties sought to "manipulate our appellate jurisdiction by artificially 'manufacturing' finality," the district court's willing approval of a plaintiff's motion to dismiss without prejudice "is usually sufficient to ensure that everything is kosher."  *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1066 (9th Cir. 2002).  Here, the district court clearly acted of its own volition in granting the motion to dismiss without prejudice, and we therefore have jurisdiction over the resulting final judgment.  *See id.*; *cf. Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 888 (9th Cir. 2003) (holding that we lacked jurisdiction over a final judgment that was obtained without the district

court's "meaningful[] participat[ion] in the dismissal [without prejudice] of all of the remaining claims after granting partial summary judgment").

## II

We next examine whether the Plaintiff has Article III standing to assert its Administrative Procedure Act, 5 U.S.C. § 701 *et seq* (APA), claims. The gravamen of the Plaintiff's complaint in this matter is twofold: (a) the district court erred in its prior determination, in a lawsuit to which the Plaintiff was not a party, that the RSA applies to private vendors such as the Plaintiff who lease federal land from the Navy, and (b) even if the RSA does generally apply to property leased by the Navy to private parties, it does not apply at the Plaintiff's facilities under the applicable regulations that implement the RSA. The Plaintiff further alleges that if it is required to grant preference to blind vendors at the facilities it leases from the Navy it will be forced it to close or reduce its own vending facilities, resulting in a reduction of revenue that could imperil its ability to maintain the former U.S.S. Bowfin and the surrounding museum.

These allegations are sufficient to establish Article III standing. The allegations that the Navy's actions will harm the Plaintiff's business are plainly sufficient to establish injury. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 168 (1997)

4

(holding that plaintiff established injury where agency action will result in harm to plaintiff's business). As to causation and redressability, the Navy's correspondence with the Plaintiff demonstrates that it is imposing RSA blind vendor preference at the facilities leased by the Plaintiff not because it is desirous of doing so for policy or other elective reasons, but rather because it perceives itself to be bound to do so by the district court's order and the Navy's interpretation of the RSA regulations. This is sufficient to establish both causation and redressability. *See id.* at 168-69; *see also Rennee v. Duncan*, 686 F.3d 1002, 1013-14 (9th Cir. 2012) ("If an agency has misinterpreted the law, there is Article III standing 'even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason.'" (ellipses in original) (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998)).

We recognize that the Navy has entered into a preliminary agreement with the Hawai'i Health and Human Services Division that could be interpreted as independently requiring the Navy to impose RSA preference in future leases with the Plaintiff. Because that agreement merely obligates the Navy to require the Plaintiff to "comply with the RSA," however, it in no way serves to deprive the Plaintiff of standing. If the district court were to determine that the RSA does not apply on the property leased by the Plaintiff or that the Plaintiff's operations are in

5

accordance with the RSA's implementing regulations, then the Navy would not be in breach of its agreement with Hawai'i.[1] The agreement between the Navy and Hawai'i does not, therefore, undermine the Plaintiff's Article III standing.

## III

Our enquiry does not end with Article III standing. Because the Plaintiff asserts claims under the APA it must also demonstrate prudential standing. *Bennett*, 520 U.S. at 162-63. A plaintiff establishes prudential standing under the APA if "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected *or regulated* by the statute . . . in question." *Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) (emphasis added). We conclude that the Plaintiff is within the RSA's zone of interest under these circumstances because, as a current and future lessee being forced to comply with the RSA, it is arguably being regulated by the statute.

---

[1] We express no view as to whether the Plaintiff's interpretation of the Navy's regulations has merit. Nor do we express any view as to whether the Plaintiff's interpretation of the RSA is barred either through collateral estoppel or any other doctrine by the district court's prior determination in another lawsuit that the RSA generally applies on land leased by the Navy to private parties. We do note, however, that the general rule is that nonparties can be bound by prior judicial determinations when the nonparty is in a property-based privity relationship with a party to the original action. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).

As an initial matter, however, we must disagree with the Plaintiff that as a private entity that leases property from the federal government it is "arguably . . . protected" by the RSA. Although it is true that the prudential standing enquiry is a generous one, we find nothing in the RSA that even "arguably" suggests that the statute protects the interests of lessees of federal land that seek to compete with blind vendors. Nor does this case remotely resemble *NCUA v. First Nat'l Bank*, 522 U.S. 479 (1998). In *NCUA*, the Supreme Court held that banks, as the competitors of credit unions, were the unintended beneficiaries of a statute that limited the size of credit unions; banks therefore had prudential standing to challenge the regulations implementing that statute. *See id.* at 498-99. Here, by contrast, nothing suggests that lessees of governmental lands are unintended beneficiaries of the RSA, a statute that is entirely designed to *limit* the competition that blind vendors on federal property face from vendors with unimpaired vision.[2]

Nonetheless, it is apparent that the Plaintiff has prudential standing under the less-litigated "arguably regulated" prong of the *Data Processing* test. *See Stock West Corp. v. Lujan*, 982 F.2d 1389, 1396 (9th Cir. 1993) (holding that a plaintiff had prudential standing to challenge an agency's "interpretation and application"

---

[2] For the same reasons, we reject the Plaintiff's suggestions that it has an implied cause of action under the RSA rather than via the APA.

of its regulations where that interpretation "stymied" its business). As the Supreme Court recently stated: "If the Government had violated a statute specifically addressing how federal land can be used, no one would doubt that a neighboring landowner would have prudential standing to bring suit to enforce the statute's limits." *Match-E-Be-Nash-She Wish Band v. Patchak*, 132 S. Ct. 2199, 2211 (2012). As a lessee of Navy property whose use of that property is being directly affected by the Navy's interpretation of its obligations under the RSA, the Plaintiff is an entity that is "arguably" regulated by the RSA. *See id.* ("[W]e have always conspicuously included the word 'arguably' in the [zone of interests] test to indicate that the benefit of any doubt goes to the plaintiff.").

IV

The district court also concluded that the Plaintiff's APA claims were non-justiciable because they are not ripe and because the Plaintiff failed to exhaust its administrative remedies. The Plaintiff failed to appeal these alternate grounds for dismissal. Nonetheless, because these issues are jurisdictional, they "can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). For this reason, we ordered the parties to submit supplemental briefing on the issues of ripeness and exhaustion, and we address those issues now.

8

In its supplemental brief, the Government concedes—and we agree—that the district court erred when it concluded that the Plaintiff's APA claims were barred for failure to exhaust administrative remedies. The RSA's administrative remedies are available only to two types of entities: blind vendors and state agencies designated to implement the RSA. *See* 20 U.S.C. § 107d-1. Because the Plaintiff had no administrative remedy under the RSA to exhaust, its APA claims are not barred for failure to exhaust.

As to ripeness, we also conclude that the district court erred in finding the Plaintiff's APA claims to be unripe. We take a "pragmatic and flexible view of finality," looking to "whether the [challenged] administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Assoc. of Am. Med. Colleges v. United States*, 217 F.3d 770, 780 (9th Cir. 2000); *see Bennett*, 520 U.S. at 177-78. Here, the Navy's communications with the Plaintiff evidences that the Navy has taken a final position regarding the Plaintiff's legal rights. Indeed, it is hard to imagine what additional action the Navy might take to further finalize its view that it is required to impose RSA preference in any future leases with the Plaintiff. Accordingly, applying our pragmatic approach to ripeness, we

9

conclude that the Plaintiff's APA claims are ripe. *See Bennett*, 520 U.S. at 177-78

(holding that an agency action are ripe for review where the plaintiff's "rights or

obligations have been determined" or where "legal consequences will flow" from

the agency decision (quotation marks and citation omitted)).

V

We do agree with the Government's position with respect to one issue. We

hold that the district court properly dismissed Count III of the Plaintiff's complaint,

which alleges a cause of action under federal common law and *Taylor v. Sturgell*,

553 U.S. 880 (2008). *Taylor* is a case about the scope of res judicata under federal

common law. In *Taylor*, the plaintiff brought claims under the Freedom of

Information Act, which permits suit by "any person" whose FOIA request is

denied. *Id.* at 903 (5 U.S.C. § 552(a)(3)(A)). The only issue was whether Taylor's

particular FOIA suit was precluded by a prior FOIA suit by another citizen

requesting the same information. We reject the Plaintiff's suggestion that *Taylor*

somehow created a new federal common law cause of action for any party that

seeks to challenge a prior judicial adjudication of a dispute between other parties.

We therefore affirm the district Court's dismissal of Count III.

VI

In sum, we conclude that the district court erred in dismissing the Plaintiff's APA claims. The Navy has taken a final position on the Plaintiff's obligation to implement the RSA at the property the Plaintiff leases from the Navy. According to the Plaintiff's pleadings as well as evidence in the record, this determination is injurious to the Plaintiff's business interests. Accordingly, the Plaintiff has both Article III and prudential standing to challenge the Navy's actions. We also conclude that the Plaintiff's APA claims are ripe and that it was not required to exhaust administrative remedies because it had none available. Finally, we affirm the district court's dismissal of Count III of the Plaintiff's complaint because *Taylor v. Sturgell* did not create a new cause of action for individuals who do not already have a means to challenge administrative actions.

**REVERSED and REMANDED**