**Ross PEROT, Pat Choate, and Perot '96, Inc., Appellants,**

v.

**FEDERAL ELECTION COMMISSION, and the Commission on Presidential Debates, Appellees.**

**Dr. John HAGELIN, Dr. Mike Tompkins, and the Natural Law Party of the United States of America, Appellants,**

v.

**FEDERAL ELECTION COMMISSION, and the Commission on Presidential Debates, Appellees.**

Nos. 96–5287, 96–5288.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 3, 1996.

Decided Oct. 4, 1996.

Issued Oct. 11, 1996.

Rehearing Denied in No. 96-5288 Oct. 15, 1996.

---

29. *McMillan,* 477 U.S. at 91–92, 106 S.Ct. at 2419.

30. *See supra* note 2.

Thomas O. Gorman, Washington, DC, argued the cause for appellants Ross Perot, et al., with whom Samuel W. Lanham, Jr., Bangor, ME, Jamin B. Raskin, and Thomas O. Sargentich, pro hac vice, and Robert E. Steinberg, Washington, DC, were on the briefs.

Thomas M. Newmark, St. Louis, MO, argued the cause (pro hac vice) for appellants Dr. Hagelin, et al., and was on the brief.

Richard B. Bader, Associate General Counsel, Washington, DC, argued the cause for appellee Federal Election Commission, with whom Lawrence M. Noble, General Counsel, was on the brief.

Lewis K. Loss, Attorney, Washington, DC, argued the cause for appellee Commission on Presidential Debates, with whom William H. Briggs, Jr., was on the brief.

Before: SILBERMAN, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Two days hence a series of debates between candidates nominated by the Democratic Party and the Republican Party for President and Vice President of the United States is scheduled to begin. One day ago this court heard argument concerning those debates. The case was argued before the district court on October 1, 1996. In view of the importance of the issues and the short time remaining before the debates begin, this court granted the motions for expedited review.

Appellants in these consolidated appeals are Ross Perot and Pat Choate, the presidential and vice-presidential nominees of the Reform Party, and their campaign organization, Perot '96, Inc. (collectively "Perot"); and Dr. John Hagelin and Dr. Mike Tompkins, the nominees of the Natural Law Party of the United States, and their party (collectively "Dr. Hagelin"). They appeal from the denial of injunctive relief and the grant of summary judgment to the Federal Election Commission ("FEC") and the Commission on Presidential Debates ("CPD"). Appellants now raise only two contentions. Perot contends that the FEC has unlawfully delegated legislative authority to a private, non-profit corporation, in violation of Article I of the Constitution. Dr. Hagelin contends that the district court erred in granting summary judgment on the grounds that it lacked jurisdiction to enjoin a violation of the Federal Election Campaign Act of 1971 ("FECA"), 2 U.S.C. § 431 *et seq.* (1994), despite the inability of the FEC to address the violation prior to the 1996 presidential debates scheduled by the CPD to begin on October 6, 1996. Hence, we do not address the merits of appellants' other claims, presented to the district court, that they were wrongfully excluded from the debates. On the issues before this court, we find no merit in Perot's constitutional challenge or in Dr. Hagelin's contentions. As to the validity of the FEC regulation at the center of this controversy, we conclude that the grant of summary judgment sustaining it was premature. Accordingly, we affirm the denial of injunctive relief, vacate the grant of summary judgment relating to the claim that the regulation is inconsistent with the statute, and remand with instructions to dismiss the regulatory claim without prejudice.

## I.

The CPD is a private, non-profit corporation formed in 1987 for the purpose of sponsoring presidential debates. In prior years, that task had been performed by another non-profit entity, the League of Women Voters. Beginning with the 1988 presidential election, the CPD assumed that function. The members of the CPD include a former chairman of the Democratic National Committee, a former chairman of the Republican

National Committee, and other representatives of the Democratic and Republican parties. In connection with the 1996 presidential election, the CPD has scheduled a series of two presidential and one vice-presidential debates, with the first presidential debate scheduled to take place on October 6, 1996. The only candidates invited to participate are President William Jefferson Clinton and former Senator Robert J. Dole, the respective nominees of the Democratic and Republican Parties, and their vice-presidential running mates. The CPD, relying on its preannounced criteria, and the recommendation of an advisory committee consisting primarily of political scientists, based its decision to exclude other candidates on the grounds that no other candidates have a "realistic chance of winning" the 1996 election.

To understand the nature of appellants' claims, we set forth the underlying statutory and regulatory framework. The FECA prohibits "any corporation" from making "a contribution or expenditure in connection with" any federal election. 2 U.S.C. § 441b(a). Both a "contribution" and an "expenditure" are defined to include, *inter alia,* any advance of "anything of value ... for the purpose of influencing any election for Federal office." *Id.* § 431(8)(A)(I); *id.* § 431(9)(A)(I). An "expenditure" does not, however, include "nonpartisan activity designed to encourage individuals to vote or to register to vote." *Id.* § 431(9)(B)(ii).

As early as 1976, the FEC recognized that § 441b could be construed to bar the use of corporate funds to stage debates. *See* 44 Fed.Reg. 59,162 (1979). To remove doubt about the legality of corporate sponsorship of debates, the FEC promulgated a regulation

incorporating its view that "nonpartisan debates are designed to educate and inform voters rather than to influence the nomination or election of a particular candidate," and thus "funds expended ... to defray costs incurred in staging nonpartisan debates" ought not run afoul of § 441b. 44 Fed.Reg. 76,734 (1979). The current version of this regulation, to be codified at 11 C.F.R. § 110.13, was transmitted to Congress in December 1995, and became effective March 13, 1996. It provides that eligible non-profit organizations may stage candidate debates, so long as they "use pre-established objective criteria to determine which candidates may participate in a debate." [1]

On September 19, 1995, approximately six months before the effective date of § 110.13, the CPD announced its selection criteria for participants in the 1996 presidential debates. The CPD had concluded that the historical prominence of Democratic and Republican nominees warranted an invitation to the respective nominees of the two major parties in 1996. With respect to "non-major party candidates," the CPD announced criteria by which it could identify those who had "a realistic (i.e., more than theoretical) chance of being elected." These criteria included evidence of national organization (such as placement on the ballot in enough states to have a mathematical chance of obtaining an electoral college majority), signs of national newsworthiness (as evidenced, for example, by the professional opinions of the Washington bureau chiefs of major newspapers, news magazines, and broadcast networks), and indicators of public enthusiasm (as, for instance, reflected in public opinion polls). On

---

1. The regulation reads in relevant part:
   § 110.13 Candidate debates.
   (a) *Staging organizations.* (1) Nonprofit organizations described in 26 U.S.C. 501(c)(3) or (c)(4) and which do not endorse, support, or oppose political candidates or political parties may stage candidate debates in accordance with this section and 11 C.F.R. 114.1(f).
   \* \* \* \* \* \*
   (b) *Debate Structure.* The structure of debates staged in accordance with this section and 11 C.F.R. 114.4(f) is left to the discretion of the staging organization(s), provided that:
   (1) Such debates include at least two candidates; and

   (2) The staging organization(s) does not structure the debates to promote or advance one candidate over another.
   (c) *Criteria for candidate selection.* For all debates, staging organization(s) must use pre-established objective criteria to determine which candidates may participate in a debate. For general election debates, staging organization(s) shall not use nomination by a particular political party as the sole objective criterion to determine whether to include a candidate in a debate. ...
   11 C.F.R. § 110.13.

September 17, 1996, the CPD issued a press release indicating its conclusion that no candidate other than President Clinton or Senator Dole had a realistic chance of being elected, and that, therefore, only those candidates and their vice-presidential running mates, would be invited to participate in the debates.

On September 6, 1996, Dr. Hagelin filed an administrative complaint against the CPD with the FEC, asserting that the CPD violated 11 C.F.R. § 110.13(c) by using subjective criteria to choose whom to invite as participants in its debates and by inviting President Clinton and Senator Dole based solely on their nominations by the Democratic and Republican parties. On September 13, Dr. Hagelin filed a verified complaint against the FEC and the CPD in the United States District Court for the District of Columbia seeking to enjoin the CPD from using unlawful debate selection criteria or, in the alternative, to order the FEC to take immediate action on his complaint as well as authorize it to take expedited action against the CPD's alleged violations of the FECA.

Meanwhile, on September 20, 1996, Perot filed an administrative complaint against the CPD with the FEC. He too challenged the CPD's application of its selection criteria. On September 23, 1996, Perot filed a verified complaint in the district court, requesting that the court enjoin the FEC and the CPD from violating the FEC regulations, the FECA, and various constitutional provisions.

The FEC and the CPD filed motions to dismiss the complaints. The district court consolidated the cases for argument, and, after expedited briefing, heard oral argument and ruled from the bench on October 1, 1996. The district court denied appellants' requests for preliminary injunctive relief. Applying the factors set forth in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir. 1977), the court determined first that neither Dr. Hagelin nor Perot could show a likelihood of success on the merits. The court noted that Congress had granted the FEC exclusive primary jurisdiction to adjudicate civil claims under the FECA, and it emphasized that the FECA precluded its exercise of jurisdiction over the instant claims until the FEC acted on the claims or until 120 days after those claims had been filed. The district court then looked to the balance of equities presented in appellants' claims for injunctive relief. This factor also weighed against Dr. Hagelin and Perot, as the damage they would suffer if the debates were to be held without their participation could at least be partially remedied in subsequent proceedings, and in any event it did not outweigh the public interest in allowing the debates to go forward without interference.

In addition to denying both appellants' claims for injunctive relief, the district court rejected Perot's claim that the CPD threatened a violation of his First Amendment right to freedom of speech. Relying on *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987), the court held that no such claim could lie against the CPD since it was not a state actor. The court summarily rejected Perot's equal protection, due process, and nondelegation claims. Finally, the court, treating the motions to dismiss as motions for summary judgment, granted summary judgment for appellees on the claim that § 110.113 was beyond the scope of its statutory authority. FED.R.CIV.P. 12(b), 56. Under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the court found the regulation a permissible interpretation of the FECA's exemption from the definition of "expenditure" nonpartisan activity designed to encourage individuals to vote.

## II.

We agree with the district court that it lacked jurisdiction to adjudicate the validity of the complaints filed with the FEC or to order the FEC to do so before the CPD-sponsored debate on October 6, 1996. Accordingly, we affirm the district court's dismissal of these claims on jurisdictional grounds.

Congress could not have spoken more plainly in limiting the jurisdiction of federal courts to adjudicate claims under the FECA.

The statute explicitly states that "[e]xcept as provided in section 437g(a)(8) of this title, the power of the [FEC] to initiate civil actions under subsection (a)(6) shall be the exclusive civil remedy for the enforcement of the provisions of this Act." 2 U.S.C. § 437d(e); *accord* 2 U.S.C. § 437c(b)(1) ("The [FEC] shall administer, seek to obtain compliance with, and formulate policy with respect to, this Act.... The [FEC] shall have exclusive jurisdiction with respect to the civil enforcement of such provisions.").

Section 437g requires the FEC to proceed with due deliberation after it receives a complaint alleging violations of the Act. 2 U.S.C. § 437g(a)(1). Dr. Hagelin filed his complaint with the FEC on September 6, 1996; Perot filed his complaint on September 20, 1996. CPD, which is alleged to have violated the Act, had to be notified within five days. *Id.* § 437g(a)(1). We presume this was done. The next step is for the FEC to vote to determine whether there is reason to believe the subject of the complaint has violated the Act. *Id.* § 437g(a)(2). If the complaint is not dismissed at that stage, the FEC conducts an investigation. *Id.* If the FEC's general counsel recommends that the FEC proceed to the next statutory step—a vote on whether there is probable cause to believe the respondent violated the Act—the respondent is notified and is given fifteen days to submit a brief stating its legal and factual position and replying to the general counsel's brief. *Id.* § 437g(a)(3). If the FEC then decides there is probable cause, it "shall attempt, for a period of at least 30 days," or at least 15 days if an election is imminent, to have the respondent correct or prevent the violation. *Id.* § 437g(a)(4)(A)(i) & (ii). The FEC may skip this step and refer the matter to the Attorney General for enforcement action only if it determines that the violation is knowing and willful and only if the violation is of a type included in § 437g(d). *Id.* § 437g(a)(5)(C).

■ Other procedural requirements, unnecessary to mention, also bind the FEC's

deliberations about, and investigation of, complaints. The end of the administrative road is a civil complaint filed by the FEC in the district court or an action by the complaining party. Section 437g(a)(8)(A) states: "[a]ny party aggrieved by an order of the [FEC] dismissing a complaint filed by such party under paragraph (1), or by failure of the [FEC] to act on such complaint during the 120–day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." *Id.* § 437g(a)(8)(A).[2] The district court's decision may be appealed to this court. *Id.* § 437g(a)(9).

Dr. Hagelin claims that we may ignore these elaborate statutory requirements and force the FEC to act immediately because otherwise he would suffer irreparable harm. To do so, however, would place us in conflict with our decision in *In re Carter–Mondale Reelection Committee, Inc.*, 642 F.2d 538 (D.C.Cir.1980). *Carter–Mondale* is, as the FEC argues, directly on point. The plaintiffs in that case asked the court to find a violation of the federal election laws, and requested alternatively "that the FEC be directed to conduct an immediate investigation of the [plaintiffs'] charges." *Id.* at 542. The court held that "the exclusive jurisdiction of the FEC extends to assure that the [FEC's] initial investigation is completed, or the statutory time limit allowed for an investigation has expired, before any judicial review is invoked." *Id.* It therefore declined to hear the case because "the entire matter at this time is within the exclusive jurisdiction of the Federal Election Commission." *Id.*

It is true, as Dr. Hagelin points out, that the *Carter–Mondale* opinion said there might be extraordinary circumstances allowing a party to "hurdle the explicit time restraints of the [Federal Election Campaign] Act." 642 F.2d at 543. But the opinion never specified what these circumstances might be. It did not indicate on what basis, short of holding § 437g unconstitutional (which no one urges), a court could disregard the statu-

2. Apart from § 437g(a)(8)(C), there is no private right of action to enforce the FECA against an alleged violator. *See Karahalios v. National Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 533, 109 S.Ct. 1282, 1286–87, 103 L.Ed.2d 539 (1989); *see also Cort v. Ash*, 422 U.S. 66, 82–85, 95 S.Ct. 2080, 2089–91, 45 L.Ed.2d 26 (1975).

tory commands. And the statement in *Carter–Mondale* was made before the Supreme Court instructed us that if "Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). Section 437g is as specific a mandate as one can imagine; as such, the procedures it sets forth—procedures purposely designed to ensure fairness not only to complainants but also to respondents—must be followed before a court may intervene. We assume that in formulating those procedures Congress, whose members are elected every two or six years, knew full well that complaints filed shortly before elections, or debates, might not be investigated and prosecuted until after the event. Congress could have chosen to allow judicial intervention in the face of such exigencies, but it did not do so. And as we have said, a court is not free to disregard that congressional judgment.

■ Even if we could somehow ignore the jurisdictional requirements of § 437g(a), *but see Carter–Mondale,* 642 F.2d at 542, Dr. Hagelin could not achieve the result he seeks. This court could not compel the FEC to enforce its regulation in accordance with the FECA. When the FEC's failure to act is contrary to law, we have interpreted § 437g(a)(8)(C) to allow nothing more than an order requiring FEC action. *See FEC v. Rose,* 806 F.2d 1081, 1084 (D.C.Cir.1986). Since the FEC is given 120 days to act on a submitted complaint, § 437g(a)(8)(A), its delay in this case is neither unlawful nor unreasonable. *See Rose,* 806 F.2d at 1084–85. Second, if this court were to enjoin the CPD from staging the debates or from choosing debate participants, there would be a substantial argument that the court would itself violate the CPD's First Amendment rights. *See Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (prior restraint); *Hurley v. Irish–American Gay, Lesbian & Bisexual Group of Boston,* — U.S. ——, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (speaker's choice of content).

### III.

In addition to the statutory arguments, Perot also raises a novel constitutional claim.

As we understand it, he contends that the FEC's "candidate debates" regulation unlawfully delegates legislative authority to a private, non-profit corporation, in violation of Article I of the Constitution. In fact, this attack on the regulation rests on what might be termed a subdelegation of authority theory, since the claim is that Congress has delegated authority to the FEC, which in turn has delegated some portion of that authority to the CPD. The FEC acknowledges that we have jurisdiction under 28 U.S.C. § 1331 to decide this issue, although it questions whether Perot is entitled to any relief. We agree that we have jurisdiction over the claim, but we are unpersuaded that the regulation delegates legislative authority to the CPD.

■ It is well established that Congress may, by a legislative act, grant authority to an executive agency such as the FEC to adopt rules and regulations, so long as it provides some "intelligible principle" by which the agency is to exercise that authority. *Mistretta v. United States,* 488 U.S. 361, 372, 109 S.Ct. 647, 654–55, 102 L.Ed.2d 714 (1989) (quoting *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928)). We agree with the general proposition that when Congress has specifically vested an agency with the authority to administer a statute, it may not shift that responsibility to a private actor such as the CPD. *Cf. A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 537, 55 S.Ct. 837, 846, 79 L.Ed. 1570 (1935).

■ In the cases before us, however, the FEC has not delegated any authority to the CPD. It has issued a regulation permitting eligible non-profit organizations to stage candidate debates, provided that they employ "pre-established objective criteria" to determine who may participate. Rather than mandating a single set of "objective criteria" all staging organizations must follow, the FEC gave the individual organizations leeway to decide what specific criteria to use. 60 Fed.Reg. 64,262 (1995). One might view this as a "delegation," because the organizations must use their discretion to formulate objective criteria they think will conform

with the agency's definition of that term. But in that respect, virtually any regulation of a private party could be described as a "delegation" of authority, since the party must normally exercise some discretion in interpreting what actions it must take to comply.

The contention that the regulation delegates authority to the CPD because it does not spell out precisely what the phrase "objective criteria" means goes far beyond the normal usage of the term "delegation." This position would go further than the position of Justice Scalia, who dissented from the Supreme Court's decision in *Mistretta* that a congressional grant of rulemaking authority to the United States Sentencing Commission was not an unconstitutional delegation of legislative power, but acknowledged that "no statute can be entirely precise, and ... some judgments, even some judgments involving policy considerations, must be left to the officers executing the law and to the judges applying it...." 488 U.S. at 415, 109 S.Ct. at 677 (Scalia, J., dissenting). So too, a regulation's use of a term that may be susceptible to differing interpretations does not automatically result in a delegation of authority to the entities that it governs.

Here, the FEC has chosen to give the CPD and any other organizations that wish to sponsor debates the latitude to choose their own "objective criteria." In adopting such standards, a staging organization acts at its peril, unless it first secures an FEC advisory opinion pursuant to 2 U.S.C. § 437f. Without such an opinion, the organization runs the risk that the FEC will subsequently determine that its criteria are not objective, and that its sponsorship of the debate violated § 441b. If that happens, the staging organization may be subject to the penalties provided in the FECA. The authority to determine what the term "objective criteria" means rests with the agency, however, and to a lesser extent with the courts that review agency action.

■ In sum, we are unpersuaded that the FEC has unconstitutionally delegated legislative authority to the CPD. At oral argument counsel suggested that this court should order the FEC, either through mandamus or some other extraordinary remedy, to "take back" the authority it has "delegated" to the CPD. As we understand this argument, Perot seeks to have the FEC either withdraw its regulation or revise it to define in detail what are "objective criteria." It is unclear how the FEC could accomplish this goal in time to have any effect on the presidential debates. Before prescribing new regulations, the FEC must transmit a statement of its proposed action to Congress, and the regulation may not take effect until thirty legislative days have passed. 2 U.S.C. § 438(d). Nor may the FEC render an advisory opinion concerning the legality of the CPD's preannounced criteria upon request of a third party. *Id.* § 437f(a)(1). As noted in Part II, a complaint is subject to the statutory timetable that also would preclude relief prior to the debates.

## IV.

Before the district court, Perot also argued as an appendage to the request for a preliminary injunction that the FEC lacked authority to promulgate 11 C.F.R. §§ 110.13 and 114.4(f), and that the regulations carve out an illegal exception to the corporate contribution and expenditure limits of 2 U.S.C. § 441b. On appeal Perot mentions this argument—that the FEC's debate regulation, 11 C.F.R. § 110.13, is *ultra vires*—only in a footnote of his brief, and counsel did not address it at oral argument.

The district court granted summary judgment on this claim, finding the regulations permissible under 2 U.S.C. § 431(9)(B)(ii), which exempts from the definition of "expenditure" "nonpartisan activity designed to encourage individuals to vote or to register to vote." Perot's footnote claims that the CPD's sponsorship of debates does not fall within this exemption, primarily because it is not truly nonpartisan. We need not reach the merits of this contention.

■ The FECA has no provisions governing judicial review of regulations, so an action challenging its implementing regulations should be brought under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*

Among other things, the APA directs courts to consider the administrative record in determining the legality of agency action. *Id.* § 706. Perot has not invoked the APA, and no party has produced the administrative record. *See* FED. R.APP. P. 15, 17. Consequently, the district court did not have the opportunity to consider the regulations' legality in terms of that record or the APA and the case law under it. Especially since we do not have the administrative record before us, and this issue was not fully briefed, we will refrain from reviewing the district court's grant of summary judgment. The case is simply not in a posture to permit an important question of this sort to be properly adjudicated.

Accordingly, we remand this part to the district court with instructions to dismiss without prejudice only Count IV of Perot's complaint, which raises this claim. Perot will then be free to file a new suit properly challenging the FEC's authority to promulgate the regulations. He will not suffer unduly from any delay in resolving this issue, as even an immediate order invalidating the regulations would not provide him with any meaningful relief from the alleged harms. In all other respects, the district court's order is affirmed.